IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

YSIDRO FLOREZ,

               Petitioner,

v.                                                  CIV 00-1753 JP/KBM

JOE WILLIAMS, Warden,

               Respondent.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on the petition of Ysidro Florez for a Writ of Habeas Corpus Under 28 U.S.C. § 2254 filed December 14, 2000, *Doc. 1,* his supplemental exhibits to the petition, *Doc. 9,* and Respondent's Answer, *Doc. 12.* Because Florez filed after the effective date of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards[1] apply to this case. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999). All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 121 S. Ct. 93 (2000); Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.* Having considered the arguments, pleadings, and relevant law, I find the petition without merit and recommend that it be denied.

---

[1] A federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2); *see also Williams v. Taylor,* 529 U.S. 362, 120 S. Ct. 1495 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000), *cert. denied*, 121 S. Ct. 1117 (February 20, 2001).

## I.  Factual Background

In November 1997 in the very early morning, Ms. Ruth Brown, a seventy-two year old woman who lived alone in a trailer, reported that she had been raped.  The details of the rape, Petitioner's arrest, and trial testimony are set forth more fully in the parties briefs on direct appeal.  *See Answer, Exhs. M-Q.*[2]

To summarize briefly, Ms. Brown testified that she locked her front and back doors before going to bed.  She was awakened by loud screeching noises to find a man appear at her bedroom door.  She demanded to know what he was doing there and hit him a few times.  The intruder shoved her onto the bed, removed her clothing with a jerk, and attempted to rape her.  His attempts at penile penetration were unsuccessful, however, because he could not maintain an erection.

Fearing for her life, Ms. Brown did not resist and made a point to talk to him throughout the one to two hour ordeal.  Several times he hurt her and held her down, although he did not beat or choke her.  At one point she persuaded him to move a bowl her grandson made for her so that it would not be broken.  The intruder also accommodated her requests to use the bathroom, smoke, and drink water, but then subjected her to digital penetration and oral sex.

The police investigated early that same morning and found evidence that Ms. Brown's back door had been pried open at the lock with a screwdriver.  They located the screwdriver, which did not belong to Ms. Brown, near the back door.  The police also took hair samples and a fingerprint from the bowl.

_____

[2]  Unless otherwise noted, citations to exhibits are those attached to Respondent's Answer.

Ms. Brown could not identify her assailant that morning.  In fact, she did not know Florez was accused of the rape until she read it in the newspaper.  Although the record is not entirely clear on the sequence of events leading to the police to suspect Florez, the absence of the details is not material to this disposition. The fingerprint taken from the bowl matched Petitioner's fingerprint of record, and the police secured a search warrant to collect his hair samples and blood.  The subsequent results of his hair and DNA tests also linked Petitioner to the evidence taken from Ms. Brown's home.

When questioned before trial why his fingerprints were found in Ms. Brown's home, Florez told police only that two or three years earlier he had mowed her lawn and was in her house.  Indeed, Ms. Brown recalled that years earlier, Petitioner had performed outside work around her house and had come into her kitchen while she wrote him a check.

At trial, however, Florez admitted that he was in Ms. Brown's home on the day in question.  Petitioner testified that he was walking home in the early morning hours after attending a birthday party where he had been drinking.  Upon noticing that Ms. Brown's back door was wide open, out of concern for her, he entered the home.  Florez contended that Ms. Brown removed her pajamas and climbed into bed, inviting him to have sex.  Because he had been drinking, Florez was unable to consummate the alleged consensual encounter.  Florez described himself as "buzzed," but that he knew – there was no question in his mind – what was going on that night.

## II.  Procedural Background

Petitioner was charged with aggravated burglary and criminal sexual penetration in the second degree in violation of N.M. STAT. ANN. § 30-16-4C and § 30-9-11D(4), respectively.  A

jury convicted him of both counts.  He was sentenced to a total of twenty-six years incarceration, of which eight years were imposed for being a habitual offender due to two prior felony convictions for burglary.  *E.g., Exh. A, Exh. P at 1.*

Petitioner's trial attorney, Juan Dawson, filed an appeal and raised sufficiency of the evidence claims.  However, Mr. Dawson did not comply with state court rules concerning the content of appeal documents or subsequent court orders to rectify the situation.  Mr. Dawson was later disciplined for his conduct in connection with the appeal and ordered to reimburse Florez the $1,000 he had paid for the appeal.  *See Doc. 9.*  The disciplinary proceeding specifically did not involve or express an opinion on Mr. Dawson's performance as trial counsel.  *Id. (Proceedings, n.1).*

Moreover, Mr. Dawson's performance as appellate counsel did not affect the appeal. Instead, Mr. Dawson was permitted to withdraw and the New Mexico Public Defender stepped in to represent Petitioner.  *See Exhs. H-L.*  The matter was assigned to the general calendar and fully briefed on a total of four issues: (1) alleged ineffective assistance of counsel for failing to request instructions on intoxication and lesser-included offenses; (2) whether the jury instructions and the trial judge's answer to a jury question misstated the law thereby violating due process; (3) whether imposition of sentences for both aggravated burglary and criminal sexual penetration violated double jeopardy; and (4) the sufficiency of the evidence on the aggravated burglary charge.  *See Exh. O.*  The New Mexico Court of Appeals addressed all the issues on the merits and affirmed.  *Exh. R.*  The New Mexico Supreme Court denied certiorari on May 26, 2000. *Exhs. S-T.*

On October 16, 2000, Florez filed a *pro se* petition for state habeas relief raising the same

four issues that had been raised on direct appeal.  *Exh. U.*[3]  Noting that Mr. Dawson had been

disciplined, he additionally argued that trial counsel was ineffective because he failed to "remove"

a friend of Ms. Brown's daughter from the jury.  The district court denied the claims on

November 14, 2000, saying:

> The identical issues raised in the instant Petition were addressed by
> the Court of Appeals.  Certiorari was denied by the Supreme Court
> of the State of New Mexico.  The materials received, ***retrieved*** and
> reviewed by this Court clearly show the Movant is not entitled to
> habeas corpus relief as a matter of law.

*Exh. V (emphasis added).*  Thus, it appears that, while not providing any reasoning, the court

rejected the additional ineffectiveness claim on the merits as well.

Florez did not seek review in New Mexico Supreme Court.  Instead, he filed this action on

December 14, 2000, raising the same five issues identified above.  Respondents concede

exhaustion, raise no issue of procedural default, and argue that the petition should be denied

under AEDPA standards.

### III.  Analysis

#### A.  Sufficiency of Evidence and Double Jeopardy Claims Are Without Merit

The Tenth Circuit has not resolved whether sufficiency of evidence claims are resolved as

questions of law or fact under AEDPA.  *Valdez v. Ward,* 219 F.3d 1222, 1237 (10th Cir. 2000),

*petition for cert. 2/7/01.*  Nevertheless, the relevant inquiry is whether, after viewing all of the

evidence "in the light most favorable to the prosecution, ***any*** rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia,* 443

---

[3]  In his *pro se* state and federal habeas petitions, Florez essentially copies verbatim
portions of the New Mexico Public Defender's pleadings on direct appeal.

5

U.S. 307, 319 (1979) (emphasis original).  This is the same standard applied by the New Mexico

appellate courts for a sufficiency of the evidence claim.  *E.g., State v. Rojo,* 126 N.M. 438, 444-

445, 971 Pl2d 829, ___ (1999) (sufficiency); *State v. Kersey,* 120 N.M. 517, 520, 903 P.2d 828,

___ (1995) (*Jackson*).

Florez argues that the evidence was insufficient to establish a battery ("rude application of

force") independent of the conduct that constituted the criminal sexual penetration; thus, the

evidence was insufficient to prove an "aggravated" burglary.  The state Court of Appeals rejected

that argument saying "the [criminal sexual penetration] was based on the digital insertion and

cunnilingus, while the battery could have been the initial shove of the victim onto the bed."

*Exh. R. at 6.*  Based on my review of the record, I agree with this characterization of the evidence

and the conclusion that a reasonable juror could have found that an independent battery occurred

before the actual instances of completed criminal sexual penetration.

Florez further argues that because the criminal sexual penetration was the object of the

aggravated burglary, he could not be convicted for both crimes consistent with double jeopardy

principles.  As the New Mexico Court of Appeals noted, the central issue for the double jeopardy

analysis in "sex crime" cases such as this is whether the conduct is  found to be "unitary," and the

court found to the contrary:

> The jury could have found that Defendant entered the victim's
> house with the requisite intent around 4:30 a.m., and that the
> burglary became aggravated when Defendant first rudely touched
> the victim shortly thereafter, pushing her back down onto the bed in
> preparation for the attempt to have intercourse.  Later, after this
> first attempt at intercourse, after the victim went to the bathroom,
> after the victim smoked a cigarette, after the victim went into the
> kitchen and drank a glass of water, Defendant penetrated the victim
> with his finger and engaged in cunnilingus, and these were the

6

> specific acts that were charged for the CSP.  The initial act of
> battery and the later acts of CSP were sufficiently distinct in time
> and intervening events to permit the imposition of separate
> convictions and sentences.  *See* [*State v. Kersey,* 120 N.M. 517,
> 522-23, 903 P.2d 828, 833-34 (1995)]; *Herron v. State,* 111 N.M.
> 357, 361, 805 P.2d 624, 628 (1991) (listing factors to consider in
> determining whether conduct is unitary).

*Id.* at 5-6.

In a case involving substantially similar facts, the Tenth Circuit likewise found no double

jeopardy violation:

> aggravated burglary is complete once the defendant unlawfully
> enters the dwelling with the intent to commit a felony and commits
> a battery upon someone inside the dwelling . . . [it] does not require
> that defendant actually commit a felony after entering the dwelling .
> . .  Therefore, in this case, the offense of aggravated burglary was
> complete as soon as petitioner unlawfully entered the victims'
> homes with the intent to commit CSP and committed a battery,
> such as grabbing the victims from behind . . . .

*Lucero v. Kerby*, 133 F.3d 1299, 1320-21 (10th Cir.), *cert. denied*, 523 U.S. 1110 (1998).

The *Lucero* court further noted that "the acts of battery [pushing the victim on the bed or

floor] are of a different nature than the acts constituting CSP, which requires sexual penetration."

*Id.* at 1321.  Accordingly, I find that the state court decision on these claims is neither "contrary"

nor "unreasonable" under AEDPA.

### B.  Ineffective Assistance of Counsel Claims Are Without Merit

The two-prong test announced in *Strickland v. Washington,* 466 U.S. 668 (1984) governs

ineffective assistance of counsel claims.  *E.g., Mayes v. Gibson,* 210 F.3d 1284, 1288 (10th Cir.),

*cert. denied,* 121 S. Ct. 586 (2000).  Although the New Mexico Court of Appeals did not

specifically cite *Strickland* when it rejected Florez' claims of ineffectiveness, New Mexico courts

do employ the *Strickland* standards in evaluating claims of ineffective assistance of counsel. *E.g.,*
*State v. Jacobs,* 129 N.M. 448, ___, 10 P.3d 127, 142 (2000) (and cases cited therein).

Florez argues that trial counsel was ineffective for failing to request instructions on
intoxication and the lesser-included offense of criminal trespass. *See Doc. 1* at 6-8. To succeed,
he must first show that counsel's representation was "objectively unreasonable." *Clayton v.*
*Gibson,* 199 F.3d 1162, 1177 (10th Cir. 1999), *cert. denied,* 121 S. Ct. 100 (2000). In doing so,
he must overcome the strong presumption that counsel's conduct falls within the wide range of
conduct that is considered to be trial strategy and is deemed reasonable professional assistance.
To be constitutionally ineffective, counsel's conduct "must have been completely unreasonable,
not merely wrong." *Moore v. Gibson,* 195 F.3d 1152, 1178 (10th Cir. 1999), *cert. denied,* 120
S. Ct. 2206 (2000); *see also Hawkins v. Hannigan,* 185 F.3d 1146, 1152 (10th Cir. 1999).

### (1)  Counsel's Conduct Was Not Objectively Unreasonable

<u>*Intoxication Defense.*</u>  Florez was charged with aggravated burglary, a second degree
felony under N.M. STAT. ANN. 30-16-4(C), which defines the crime as including "the
unauthorized entry of any . . . dwelling . . . with intent to commit any felony or theft therein and
the person . . . commits a battery upon any person while in such place." The jury was instructed:

> For you to find the defendant guilty of aggravated burglary as
> charged in count 1, the state must prove to your satisfaction beyond
> a reasonable doubt each of the following elements of the crime:
>     1.  The defendant entered the dwelling house of
>     Ruth Brown without authorization or permission;
>     2.  When the defendant entered the dwelling house
>     of Ruth Brown, he intended to commit criminal
>     sexual penetration when he got inside;
>     3.  The defendant touched or applied force to Ruth
>     Brown in a rude and angry manner while inside;
>     4.  This happened in New Mexico on or about the
>     second day of November 1997.

*Exh. M at 6.*

Specific intent to commit a felony is an element of aggravated burglary to which intoxication would be a defense. *E.g., State v. Romero*, 125 N.M. 161, 164, 958 P.2d 119, ___ (Ct. App. 1998). The exculpatory defense of intoxication is not available in New Mexico if there is no evidence that the intoxication rendered Petitioner incapable of acting purposefully. *E.g., State v. Privett,* 104 N.M. 79, 82, 717 P.2d 55, 58 (1986) (citing *State v. Luna,* 93 N.M. 773, 606 P.2d 183 (1980)); *see also Valdez v. Ward,* 219 F.3d at 1244 (not unreasonable for state court to conclude defendant who was able to remember and describe events did not warrant intoxication defense and therefore counsel not ineffective in failing to request instruction).

The New Mexico Court of Appeals concluded that the evidence produced in Florez' trial would not have warranted giving the intoxication defense instruction.

> In [*State v. Talley,* 103 N.M. 33, 702 P.2d 353 (Ct. App. 1985)], defendant's **only** defense was the inability to form a specific intent [yet counsel did not tender an intoxication instruction]. . . . [W]e reversed because it would not be a tactical decision to present evidence on defenses and then fail to submit instructions that would allow the jury to find in the defendant's favor on those defenses. . . . In this case, the evidence of intoxication was fortuitously introduced to explain why Defendant was unable to achieve an erection. It did not establish that Defendant was too intoxicated to form specific intent, and, indeed, Defendant himself testified that, although he was 'buzzed,' he knew what he was doing.

*Exh. R. at 2, 3 (emphasis added).*

Indeed, Lopez' testimony that the incident was consensual and that he was had the intent to engage in sexual relations would have been inconsistent with an intoxication defense theory. Thus, counsel was not ineffective in failing to request the instruction. *See Jackson v. Shanks,* 143 F.3d 1313, 1320 (10th Cir.) ("Trial counsel's decision not to present inconsistent defense theories does not constitute ineffective assistance. . . . Similarly, counsel's failure to seek an intoxication

instruction was reasonable, because the instruction would have conflicted with his chosen trial strategy."), *cert. denied,* 525 U.S. 950 (1998).

*Criminal Trespass.*  The state's theory on the aggravated burglary charge was that Petitioner intended to commit criminal sexual penetration upon entering Ms. Brown's home and that by pushing her down onto the bed, he committed an act constituting a battery.  The criminal sexual penetration charge was in the second degree and, therefore, dependent on a finding of aggravated burglary.[4]

The New Mexico Court of Appeals declined to decide whether Petitioner would have been entitled to a criminal trespass instruction.[5]  Criminal trespass, a misdemeanor under N.M.

---

[4]  Count 2 charged Florez with criminal sexual penetration in the second degree under N.M. STAT. ANN. § 30-9-11D(4), which defines the crime as including "all criminal sexual penetration perpetrated . . . in the commission of any other felony."  The jury was instructed:

> For you to find the defendant guilty of criminal sexual penetration while committing another felony as charged in count 2, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> > 1.  The defendant caused Ruth Brown to engage in cunnilingus, or cause the insertion to any extent of his finger into the vagina of Ruth Brown;
> > 2.  The defendant committed this act during the commission of a burglary;
> > 3.  This happened in New Mexico on or about the second day of November 1997.

*Exh. M at 7.*

[5]  "By this commentary, we do not mean to suggest that Defendant would not have been entitled to lesser included offense instructions [criminal trespass or criminal sexual penetration in the third degree] had his counsel requested them.  We do not decide that issue."  *Exh. R. at 3.*  On appeal, the state characterized the Public Defender's brief as arguing trial counsel should have requested a lesser-included instruction on criminal sexual penetration in the third degree, and the court included that argument in its discussion.  *See Exh. P at 14.*  I do not read the brief that broadly.  *See Exh. O at 2-7.*  In any event, Petitioner does not argue here that a lesser-included instruction on criminal sexual penetration in the third degree should have been given.  In light of

STAT. ANN. § 30-14.1, is a lesser-included offense of aggravated burglary and consists of two

elements: (1) knowingly entering or remaining in a private dwelling, (2) without permission of the

owner. *E.g., Romero*, 125 N.M. at 164-165, 958 P.2d at ___.  In other words, unlike aggravated

burglary, the state is not required to prove that the trespass was committed with the specific intent

to commit a felony once inside or that force was used or threatened.

      In light of Petitioner's version of the facts at trial, I find that tendering a criminal trespass

instruction would not have been to his benefit.  If the jury believed Florez that sex was invited and

consensual, he would have been acquitted of both charges.  On the other hand, if the jury believed

Florez' version but had been given an alternative instruction on the criminal trespass, he would

have faced a potential prison sentence.  See N.M. STAT. ANN. § 31-19-1 (misdemeanors carry

potential term of imprisonment of up to one year).  Indeed, Petitioner's own version of events

established a criminal trespass – he testified that he entered Ms. Brown's home without her

permission.  In light of his client's testimony, it was entirely reasonable for counsel not to expose

his client to a potential sentence of incarceration.

      Furthermore, a lesser-included offense instruction is not constitutionally required in

noncapital cases.  *E.g., Lujan v. Tansy*, 2 F.3d 1031, 1036 (10th Cir. 1993) ("this circuit has

agreed with a majority of those circuits addressing the issue and held that a petitioner in a

non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense

instruction 'even if in our view there was sufficient evidence to warrant the giving of an

instruction on a lesser included offense.' *Chavez v. Kerby,* 848 F.2d 1101, 1103 (10th Cir.

1988)"), *cert. denied,* 510 U.S. 1120 (1994).

---

my findings in Section B and footnote 6, any such argument would be without merit.

_State Court's Conclusion._  On direct appeal, the Public Defender argued that if the instructions had been requested, the jury would have had the opportunity to find Florez guilty only of criminal trespass and criminal sexual penetration in the third degree,[6] and he could have received an eight-year sentence.  *Exh. O at 3.*  The New Mexico Court of Appeals concluded counsel acted reasonably in pursuing what it characterized as an "all or nothing" defense.[7]   In light of my findings above, I cannot say that the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent or is "an unreasonable determination of the facts in light of the evidence presented."

## (2) No Prejudice

Florez must also establish "prejudice," that is, absent counsel's errors, there is a "reasonable probability" that the outcome of the trial would have been different.  *Moore,* 195 F.3d

---

[6]  If no other felony is committed "all criminal sexual penetration perpetrated through the use of force or coercion" constitutes a crime in the third degree under N.M. STAT. ANN. § 30-9-11.E.  *See Lucero,* 133 F.3d at 1317.

[7]  It is well established that an appellate court will not second guess the strategy and tactics used by trial counsel.  *See State v. Gonzales,* 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992).  Even "[b]ad tactics and improvident strategy do not necessarily amount to ineffective assistance of counsel."  *State v. Orona,* 97 N.M. 232, 234, 638 P.2d 1077, 1079 (1982).
* * * * *
[I]t could have been a tactical decision to go with the simple, straightforward defense . . . rather than risk potentially confusing the jury with legalistic arguments dependent on finding some elements proved, but not others, and independent on believing portions of witness testimony, but not others.  Under these circumstances, we cannot say there was ineffective assistance of counsel.

*Exh. R at 3-4.*

at 1178.  "Reasonable probability" means that confidence in the outcome is undermined.  *Foster v. Ward,*182 F.3d 1177, 1185 (10th Cir. 1999), *cert. denied,* 529 U.S. 1027 (2000).  An ineffective assistance of counsel claim fails if either of the *Strickland* prongs are not met.

Although the New Mexico Court of Appeals did not address the prejudice prong, I conclude Petitioner cannot establish prejudice for counsel's strategy of not pursuing an intoxication defense or lesser-included instruction.  The evidence supported a conviction on both the aggravated burglary and criminal sexual penetration charges, and obviously the jury disbelieved Florez' testimony that out of concern for Ms. Brown, he entered the home through an open front door and that his encounter with her was consensual.  Thus, confidence in the jury's verdict is not undermined by any failure to request the intoxication and criminal trespass instructions.

### C.  Answer to Jury Question Raises No Constitutional Issue

As noted earlier, the two counts were interdependent.  The jury asked whether "burglary" in Instruction 4 was the same as the "burglary" charge in Instruction 3, to which the trial judge answered "yes."  The jury also inquired as to whether Petitioner could be found guilty of criminal sexual penetration but not aggravated burglary, to which the judge responded "no."  Both of these answers were given with the approval of the parties.  *Exh. M at 7-8.*

In other words, the judge correctly instructed the jury that the elements of "burglary" were the same for both instructions, and that the jury could not find Petitioner guilty of criminal sexual penetration in the second degree unless it also found him guilty on the aggravated burglary charge.  Thus, the answers accurately stated New Mexico law by requiring that as to both charges Florez must be found beyond a reasonable doubt to have: (1) entered the dwelling with the intent

13

to commit a felonious sexual offense, and (2) touched or applied force to Ms. Brown in a rude and angry manner while inside.

As best I can understand it, Petitioner further argues that he was denied due process because he believes it is "difficult" to determine what the jury was asking.  Florez seems to contend that the jury's  note should be "re-framed" as asking was whether it could render an inconsistent verdict.  *Id.* at 8.  According to Petitioner, the trial judge thus misstated the law and issued an "erroneous" jury instruction when he replied the jury could not convict of criminal sexual penetration and acquit on aggravated burglary because inconsistent verdicts will be upheld on direct appeal in New Mexico.  *Id.* at 8-9; *see also Exh. O, at 9-10.*  Apparently, Florez contends that the trial judge should have either refused to answer the question or told the jury that even though the counts were interdependent, it could issue an inconsistent verdict.

There are a number of fatal problems with this argument which was essentially dismissed as irrelevant by the New Mexico Court of Appeals.  *See Exh. R, at 4.*  First, the jury question is not difficult to decipher.  It plainly asked if the counts were interdependent, which they were, both from the prosecution ***and*** defense perspectives.  Second, there is no assertion that the jury was improperly instructed on the elements of each offense.  Indeed, the New Mexico Court of Appeals found that the trial judge correctly in instructed on the elements of each crime charged.  *Id.* Third, Petitioner does not cite, and I have not found, any New Mexico law that provides a jury in a criminal case must be instructed that it can issue inconsistent verdicts.

As there was no state law error in the instructions, no federal habeas relief is available for this claim.  Even if the instructions were wrong, federal habeas relief would not issue unless I were convinced that the error resulted in a "substantial and injurious effect or influence in

14

determining the jury's verdict." *E.g., Hale v. Gibson,* 227 F.3d 1298, 1325 (10th Cir. 2000).  To the contrary, my review of the record convinces me that even if the court's instructions could be characterized as erroneous, they produced no constitutionally prohibited effect on the verdict.

### D.  *Procedurally Defaulted Claim Is Without Merit*

The Court of Appeals did not clearly and expressly rely on a procedural default in denying the additional claim first raised by Florez in the state habeas corpus proceedings that counsel was ineffective in failing to seek removal of a juror. Nevertheless, it is clear that Florez did not exhaust his state remedies after his state petition was denied.  He simply filed his federal petition instead of petitioning the New Mexico Supreme Court for certiorari.  Exhaustion is no longer available as to the additional claim, however, because he had thirty days from the denial of state habeas relief to do so.

Although certiorari is discretionary, failure to petition the New Mexico Supreme Court within thirty days following a denial of state habeas constitutes a procedural default.  *E.g., Ballinger v. Kerby,* 3 F.3d 1371, 1374 (10th Cir. 1993).  The State does not invoke the defense of procedural default in its answer, but it is within this Court's discretion to do so *sua sponte.  See e.g., Hardiman v. Reynolds,* 971 F.2d 500, 505 (10th Cir. 1992).  Because the ineffective assistance of counsel claim regarding the juror is without merit, however, at this late stage it is more efficient to proceed to the merits of the claim than to engage in the "cause and prejudice" analysis.  *E.g., Odum v. Boone,* 62 F.3d 327, 330 (10th Cir. 1995).

Prospective jurors are presumed impartial and that presumption is not rebutted simply because a juror may not be totally ignorant of the facts and issues involved in the case.  *E.g., Hale,* 227 F.3d at 1319 (quoting *Irvin v. Dowd,* 366 U.S. 717 (1961)).  To establish the prejudice

15

prong of on an ineffective assistance of counsel claim on the basis the counsel failed to remove a

juror, Florez must show that the juror was "biased," that is, the juror "had such a fixed opinion

that he or she could not judge impartially." *Id.; see also Murphy v. Florida,* 421 U.S. 794, 800

(1975).

Florez makes no such showing here.  A mere assertion that counsel was ineffective for

failing to "remove" one of the jurors does not suffice. *E.g., United States v. Fisher,* 38 F.3d

1144, 1147 (10th Cir. 1994).  Furthermore, the state district court indicated that it "retrieved"

records in denying the claims and presumably reviewed the voir dire relating to the juror who was

the daughter of the a friend of the victim.  Although it did not provide reasoning, its result is

entitled to deference under AEDPA.  *See Aycox v. Lytle,* 196 F.3d 1174, 1177 (10th Cir. 1999).

Moreover, the fact that an attorney is suspended or disbarred does not, without more, rise

to the level of ineffective assistance of counsel under the Sixth Amendment. *E.g., Nix v.*

*Whiteside,* 475 U.S. 157, 165 (1986).  In reviewing the case law, the Seventh Circuit noted:

> Other circuits similarly have refused to find *per se* ineffectiveness
> when an attorney has been suspended or disbarred, or when he has
> performed under other professional or personal duress.  The sole
> exception that has been recognized is when a representative,
> unbeknownst to his client, has never been admitted to the practice
> of law in any state, either because he has never applied for
> admission or because he has been denied admission for a reason
> related to legal ability.

*Bond v. United States,* 1 F.3d 631, 637 (7th Cir. 1993) (citing, among other cases, to *United*

*States v. Stevens*, 978 F.2d 565, 567 (10th Cir. 1992) (no per se ineffective assistance even when

counsel is disbarred at time of proceedings and no one, including the attorney, is aware of that

status)).

Wherefore,

**IT IS HEREBY RECOMMENDED THAT** the petition be denied and this action dismissed with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period  if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_Karen B Molzen_
UNITED STATES MAGISTRATE JUDGE

17